CURETON *v.* FARMERS' STATE BANK.

Opinion delivered February 7, 1921.

1. BANKS AND BANKING — DEPOSITOR DELIVERING CHECK TO WRONG PERSON.—Where a depositor delivered checks to the designated payee's brother, mistaking him for the payee and intending that such brother should receive the proceeds of the checks, he can not recover from the bank which cashed the checks on the ground that it cashed the checks on indorsement in the payee's name forged by his brother.

2. ESTOPPEL—ACTS MAKING INJURY POSSIBLE.—If neither the depositor nor the bank was negligent in such case, the loss sustained was that of the depositor, since, as between two innocent parties, the loss must fall on him whose act contributed most to produce it.

3. BILLS AND NOTES—DELIVERY OF CHECK WITHOUT INDORSEMENT.— Delivery of a check without indorsement to a purchaser for value without notice to the purchaser of the fraud practiced on the depositor in procuring the check *held* sufficient to transfer title to the purchaser.

Appeal from Faulkner Circuit Court; *Geo. W. Clark,* Judge; affirmed.

*P. H. Prince,* for appellant.

The court erred in its findings.    There was no negligence on the part of plaintiff, Cureton.    The court over-

looked the gross negligence of those parties trading for these negotiable bills of exchange made payable to order of A. J. Carman. The bank and these others should have had the negro to identify himself. A bank must use due diligence to ascertain whether the payee's indorsement is genuine. If the indorsement is forged and the bank pays the check, the bank is liable to the depositor. 56 So. Rep. 868, 63 N. J. Law. 578. Bailee, at his peril, is bound to know to whom he delivers; he must use due diligence. 3 Am. & E. Enc. Law (2 ed.) 754. All plaintiff did was to execute the checks to order of A. J. Carman, and, being negotiable, parties taking the checks were bound at their peril to have the party identified before accepting and paying the checks. 98 Ark. 294; 104 *Id.* 550; 105 *Id.* 152; 89 *Id.* 349; 103 *Id.* 326. The general rule is, no man can get title to personal property from one who has no title; the only exception is a *bona fide* purchaser who is protected where the owner has conferred power upon the seller the apparent right of property as owner. 128 Ark. 600-3; 62 *Id.* 84; 42 *Id.* 475.

Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative against the party against whom it is sought to enforce such right. Act No. 81, Acts 1913, p. 278, § 23. If the instrument is payable to bearer, it is negotiable by delivery; if to order, it is negotiable by indorsement of the holder, completed by delivery. *Ib.,* § 30, p. 279. The title of a person who negotiates an instrument is defective within the meaning of the act when he obtains the instrument by fraud. *Ib.,* § 55, p. 284. A check is a bill of exchange drawn on a bank and a negotiable instrument. *Ib.,* p. 316, § 90. Where personal property is procured from the owner by a felonious act or by fraudulent pretense, the ownership is not changed, and he may recover without tendering the consideration received. 92 Ark. 509; 95 *Id.* 131; 77 *Id.* 279. No title passed to Carman from plaintiff, as they were feloniously obtained and no title passed and he could not trade, sell

or have the checks cashed by the bank or the other parties. 49 Ark. 40. The bank is responsible and must pay plaintiff the money negligently and wrongfully paid out. The findings and judgment are erroneous.

*George F. Hartje* and *R. W. Robins,* for appellees.

1. The purpose of identification is to insure payment of the checks to the real payee, and if that is accomplished the want of identification is immaterial. The question then is whether the imposter is the real payee or at least whether appellant is not estopped to deny that he is such payee. It was clearly the intention of appellant to make these checks to the person standing before him, and if appellees, before cashing the checks, had made proper inquiry whether the person presenting them was the person to whom they were intended to be paid, the answer would have been in the affirmative. Of course, appellant was deceived as to the name of the person he was dealing with, but he dealt with and intended to deal with the visible man who stood before him, identified by sight and hearing, and although he was mistaken, he was the person intended by him as the payee, and in fact the genuine indorsement of the person to whom the loan was made and for whom the checks were intended. 7 Ind. App. 322; 33 N. E. 247; 34 *Id.* 608; 141 Mass. 231; 55 Am. Rep. 471; 4 N. E. 619; 109 Atl. 296.

2. The indorsement by impostor was not a forgery. To make it a forgery, there must be a design to pass as genuine a writing which is not. 111 Cal. 274, 43 Pac. 901; 31 L. R. A. 831; 64 Ill. App. 225; 109 Atl. 296.

3. The impostor did not have to indorse check to convey title. Heiligers was a purchaser for value and without notice of the fraud. A delivery of the check for value with the intent to part with the title is sufficient. 91 Ark. 485; 36 *Id.* 501; 69 *Id.* 62; 97 N. E. 395; 38 L. R. A. (N. S.) 1111; 61 N. E. 596; 109 Atl. 296; 46 Atl. 420; 79 Am. St. 717. These cases govern this case. As the transaction began with appellant, Cureton, it was his duty to ascertain the identity of the party. Failing to do

this, he became the victim of a fraud. Where one of two innocent parties must suffer, the one whose act caused the loss should bear the consequences. It would be unreasonable and unjust to permit appellant to escape the natural consequences of his own neglect or mistake and the court was correct.

WOOD, J. On January 30, 1919, H. V. Carmon obtained a loan from H. E. Cureton. H. V. Carmon, in the name of A. J. Carmon, executed a chattel mortgage to secure the loan. Cureton drew checks payable to A. J. Carmon on the Farmers' State Bank of Conway, Arkansas, where he had on deposit more than the sum of $300. There were six different checks for different amounts, amounting in the aggregate to $265. These checks were delivered by Cureton to H. V. Carmon, believing that he was delivering the same to A. J. Carmon. H. V. Carmon forged the name of A. J. Carmon on five of the checks and traded the same to merchants in Conway. One of the checks for $80 was cashed by one Sam Heiligers without endorsement. The checks were presented to the Farmers' State Bank by the various indorsees and were paid by the bank out of the funds on deposit to the credit of Cureton. A. J. Carmon never received the checks, nor were they delivered by Cureton to a third party with directions to deliver the same to A. J. Carmon. Neither the bank nor the various parties who presented the checks, made any effort to have H. V. Carmon identified as A. J. Carmon.

The appellant brought this action against the Farmers' State Bank to recover from it the sum of $265, the aggregate amount of the various checks, alleging that the bank had negligently failed to have the checks indorsed by A. J. Carmon and had failed to pay the checks to his order. At the instance of the bank, the various parties who presented the checks to the bank for payment, and to whom it paid the money, were made parties defendant. The defense of the bank was that it paid the checks to the person to whom Cureton delivered the same and to the person he intended should receive the proceeds of the

checks. The cause was tried by the circuit court sitting as a jury, and the above are the facts upon which a judgment was rendered in favor of the bank, from which is this appeal.

1. The appellant himself testified that he intended that the man with whom he made the contract and to whom he delivered the checks should get the money, but he believed that that man was A. J. Carmon. The court, therefore, was correct in finding the facts to be that "at the time of the delivery of the checks the plaintiff intended that the man to whom he delivered the checks should have the proceeds." Upon these facts the court was correct in declaring the law to be that the appellant must "stand the loss occasioned by his negligence in failing to have the person properly identified with whom he was dealing." Whether the loss was occasioned through the appellant's negligence, or through mistake on his part, without negligence, caused by the deception practiced upon him by H. V. Carmon, the result is the same. Appellant, by delivering the checks in the first instance to H. V. Carmon, enabled him to practice the subsequent frauds which resulted in the loss of which the appellant complains. The appellee bank, having on general deposit funds to the credit of the appellant, at its peril would have been bound to ascertain that the signature to these checks was the genuine signature of appellant, and if the signature of appellant had been forged, though never so clever the deception, the appellee bank would have been liable. But there is no testimony in the record to show that the appellee bank was familiar with, or that it had any means of ascertaining that the indorsement of the name of A. J. Carmon on the checks was a forgery. The checks were not forgeries. *People* v. *Bendit,* 111 Cal. 274, 52 Am. St. Rep. 186; *Montgomery Garage Co.* v. *Manufacturers' Liability Ins. Co.,* 109 Atl. 296. The checks were drawn by the appellant and delivered to H. V. Carmon, who, it is true, was impersonating his brother, A. J. Carmon. H. V. Carmon was the payee of the checks under the name of A. J. Carmon, and he, un-

der such assumed name, indorsed them and received the proceeds. It is wholly improbable, not to say impossible, that appellant would have suffered the loss of which he complains, had he not drawn these checks and delivered the same to H. V. Carmon. The evidence shows that the appellant knew that one of the Carmons was a rascal. H. V. Carmon represented to appellant that the rascal was his brother, A. J. Carmon, and, inasmuch as the brothers favored, appellant accepted such representations without further inquiry. It is manifest from these facts that, but for the negligence, or, to say the least, the mistake of the appellant himself in drawing and delivering the checks to H. V. Carmon, the loss would not have occurred.

This court, in *O. J. Lewis Mercantile Co.* v. *Harris*, 101 Ark. 4-7, announced the well-established doctrine that "the holder of commercial paper, payable to order, must trace his title through a genuine indorsement, and that the drawee of a draft, payable to order, who pays upon a forged or unauthorized indorsement, does so at his peril." See also *Koen* v. *Miller*, 105 Ark. 152. But, as is said in *Land Title & Trust Co.* v. *Northwestern National Bank*, 196 Pa. 230, 79 Am. St. Rep. 717, "this doctrine is confined to cases in which the depositor has done nothing to increase the risk of the bank. It should not apply when the check is issued to one whom the drawer intends to designate as the payee: First, because in such a case the risk is not the ordinary risk assumed by the bank in its implied contract with its depositor, but a largely increased risk, as it follows that a check thus fraudulently obtained will be fraudulently used. The bank is deprived of the protection afforded by the fact that a *bona fide* holder of a check will exercise care to preserve it from loss or theft, which are the ordinary risks. There is thrown upon the bank the risk of antecedent fraud practiced upon the drawer of the check, of which it has neither knowledge, nor means of knowledge; secondly, because in such a case the intention with which the drawer issued the check has been carried out. The

person has been paid to whom he intended payment should be made; there has been no mistake of fact, except the mistake which he made when he issued the check, and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error into which he was led by the deception previously practiced upon him." *McHenry* v. *Old Citizens' National Bank,* 97 N. E. 395, 38 L. R. A. (N. S.), 1111; *Meridian National Bank* v. *First National Bank,* 7 Ind. App. 322; *Robertson* v. *Coleman,* 141 Mass. 231. If it be conceded that the appellant was guilty of no negligence in delivering the checks to H. V. Carmon and that appellee bank and the appellant were both innocent in the transaction, which must result in financial loss to one or the other of them, then the case under the facts would come clearly within that principle of natural justice and equity which requires that as between two innocent parties the loss must fall upon that one whose acts contributed most to produce it. See *Stout* v. *Benoist,* 39 Mo. 277, 90 Am. Dec. 466, and cases there cited.

2. One check for $80 was purchased by appellee, Sam Heiligers, from H. V. Carmon, to whom appellant had delivered the check, and same was delivered to Heiligers by H. V. Carmon without indorsement. Heiligers indorsed the same and presented it to the bank and it was paid. As before stated, the checks themselves were not forgeries, and the man to whom appellant delivered the checks transferred one of the checks to appellee, Heiligers, who received the money for the same from the bank. Heiligers was an innocent purchaser, having paid his money for the check which appellant drew and without notice of the fraud that had been practiced upon the appellant. The delivery of the check to him by H. V. Carmon, under these circumstances, was sufficient to transfer the title to Heiligers. *Heartman* v. *Franks,* 36 Ark. 500; *Lanigan* v. *North,* 69 Ark. 62; *Malory* v. *State,* 91 Ark. 485. See, also, *McHenry* v. *Old Citizens National Bank, supra,* and other cases above cited.

The judgment is correct, and it is affirmed.