27 So.2d 710

## ALABAMA DRY DOCK & SHIPBUILDING CO. v. WARD.

### 1 Div. 520.

Court of Appeals of Alabama.

March 19, 1946.

Rehearing Granted Aug. 1, 1946.

Further Rehearing Denied Oct. 8, 1946.

---

[1] Ante, p. 532.

[1] Ante, p. 532.

Smith, Hand & Arendall, of Mobile, for
appellant.

Wm. G. Caffey, of Mobile, for appellee.

**CARR, Judge.**

This is an appeal from a judgment rendered by the court below in favor of the plaintiff. The case was tried by the judge without a jury.

█ Upon abundant authority it has been consistently held that, when the court tries a case without the aid of a jury, its finding of facts has the force and effect of the verdict of a jury based on the same evidence. Halle v. Brooks, 209 Ala. 486, 96 So. 341; Reid v. McElderry, 10 Ala.App. 472, 65 So. 421; Christie v. Durden, 205 Ala. 571, 88 So. 667. See, also, Hackett v. Cash, 196 Ala. 403, 72 So. 52.

Appellee claims against appellant in a number of counts of the complaint for the amounts therein stated as for money had and received. The plea of the general issue was interposed to each count.

The appellant—Alabama Dry Dock and Shipbuilding Company, which we will hereafter designate as the company—was engaged in the shipbuilding business and employed about 20,000 persons at its plant in Mobile, Alabama. Each employee was furnished a badge, on which was a definite or individual number. Salary payments were made weekly by checks. Each person entitled to be paid appeared at a window and was there identified by the presentation of his badge. The check he should receive bore his name as payee and also a number corresponding to the number on his badge. The pay clerks of the company were instructed to deliver checks to only those who were in this manner identified. So far as the evidence discloses these instructions were followed.

Appellee was engaged in cashing these pay checks for a consideration in the form of commission. The methods of identification employed by him and his assistants were in many respects similar to those used by the company. If a holder presented a check to appellee or his employees, to be cashed, the check number and badge number were examined and if they corresponded and proper endorsement was made, the check was cashed. The evidence reveals that in some cases if the holder of the check did not have his badge, identification was procured by means of a pass, driver's license or registration card. As we view the testimony in this regard, we conclude that the trial court was authorized to find that this latter method was resorted to infrequently and in rare cases. Appellee and the company both used the same local bank as a depository for funds.

In the course of the transactions we have outlined above the company made satisfactory proof to the bank that some of the employees to whom pay checks were due had not in fact received their checks, and the same had been paid by the bank on unauthorized endorsements of the payees. When this complaint was filed, the bank would charge back appellee's account with the amount of the checks which carried the alleged forged endorsements and credit the company's account with an equal sum.

The instant suit is against the company to recover the amounts specified in the several counts of the complaint which appellee claims were wrongfully charged against his account with the bank and credited to the account of the company. In other words, appellee contends that in equity and good conscience the company holds funds which rightfully belong to the former, and hence the counts as for money had and received.

Appellant urges the position that the checks in question were forgeries, or rather contained forged endorsements, and were for this reason wholly inoperative and ap-

pellce is without right to enforce payment thereof or to claim any recourse against the company therefor.

In support of this insistence we are cited to Title 39, Sec. 27, Code 1940, which provides: "Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Appellee does not contend against the effects of the provisions of the above section, but he seeks to bring himself under the influence of a recognized rule of law which does not make the terms of the section absolute and all inclusive.

The rule to which we refer is well stated by the text writer in 7 Am.Jur., Sec. 599, p. 435: "While the decisions upon the question of the right of the bank to pay the check to the impostor or on his indorsement are not entirely consistent, according to the weight of authority, where the drawer of a check has dealings with an impostor who assumes a false name, and the check is intended for the person with whom the drawer is dealing, payment of the check by the bank to such impostor or on his indorsement will be authorized and binding upon the depositor. In such cases the principle that, as between two innocent persons, the one whose act was the cause of the loss should bear the consequence applies. The transaction begins with the depositor, and it is his duty to use diligence to ascertain the identity of the party with whom he deals. The bank has a right to believe that the depositor has acted with full knowledge of the party to whom he gave the check for the money, and its duty to him is discharged when it satisfies itself that the payment was intended to be made to the party who presented it. Also, in such a case the intention with which the drawer issued the check has been carried out. The person has been paid to whom he intended payment should be made. There has been no mistake of fact

except the mistake which he made when he issued the check, and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error, into which he was led by the deception previously practiced upon him."

See, also, 9 C.J.S., Banks and Banking, § 356 C(5), p. 742; 3 R.C.L., Sec. 172, p. 544; 3 R.C.L., Sec. 211, p. 1002; Missouri Pac. R. Co. v. M. M. Cohn Co., 164 Ark. 335, 261 S.W. 895; Hattiesburg Production Credit Ass'n v. McNair, 193 Miss. 615, 10 So.2d 97.

The reason for the rule has logical application. If merit is accorded to appellee's claim, the intention with which the company issued the pay check had been carried out. The persons received payments to whom payments were contemplated when the checks were delivered. There was no mistake of fact, except the error that was made when the checks were mistakenly delivered to impostors. The drawer thereby endowed such imposters with authority and opportunity to endorse and cash the checks. If the evidence supports the position, the case is brought under the provisions of the closing clause of Sec. 27, Title 39, Code 1940: " * * * unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." Missouri Pac. R. Co. v. M. M. Cohn Co., supra.

Appellant insists that appellee has not carried his burden of proof, and the evidence is not sufficient to bring the case within the benefits of the rule in question.

We have hereinabove indicated the tendencies of the evidence pertinent to the matter at hand. There is testimony that there intervened a long period of time between the issuing dates and cashing dates of some checks, but this evidence has no application to the checks in question. An examination of the latter as exhibits discloses that they were cashed promptly or reasonably so after they were delivered by the company. We find also that the evidence is capable of supporting a finding by the trial judge that the checks under instant inquiry were delivered to impostors.

We entertain the opinion that it was a question for the determination of the nisi

prius court, from the evidence and the reasonable inference to be drawn therefrom, whether or not the appellee brought himself under the influence of the rule upon which he relies. Under the rule to which reference is made above, we do not think that this finding should by us be disturbed.

With the aid of helpful briefs, we have given diligent and thoughtful study to the instant query. As is often true, we have failed to find a case bearing factual similarity to the one at bar. In addition to those hereinabove cited, the following authorities lend support to our conclusions. Brannan's Negotiable Instruments Law, 2d Ed., pp. 349 to 358, inclusive; 52 A.L.R., Annotation, p. 1326; 22 A.L.R., Annotation, p. 1228; Montgomery Garage Co. v. Manufacturers' Liability Ins. Co., 94 N.J.L. 152, 109 A. 296, 22 A.L.R. 1224; Jamieson & McFarland v. Heim, 43 Wash. 153, 86 P. 165; United States v. National Exchange Bank, C.C., 45 F. 163; United States v. First National Bank & Trust Co. of Oklahoma City et al., D.C., 17 F.Supp. 611; Cureton v. Farmers' State Bank et al., 147 Ark. 312, 227 S.W. 423; Sherman v. Corn Exchange Bank, 91 App.Div. 84, 86 N.Y.S. 341; Halsey et al. v. Bank of N. Y. & Trust Co. et al., 270 N.Y. 134, 200 N.E. 671; Ryan v. Bank of Italy National Trust & Savings Ass'n, 106 Cal.App. 690, 289 P. 863; Holub-Dusha Co. v. Germania Bank of City of N. Y., 164 App.Div. 279, 149 N.Y.S. 775.

Appellant insists also that an action for money had and received is not applicable under the facts in the instant case. His position is set out in his counsel's brief as follows: "To allow the plaintiff to recover of the defendant in this case, for money had and received, would permit the plaintiff to set aside a valid and binding contract made between the Merchants National Bank of Mobile and the defendant in this case. The bank with its own funds, not any funds belonging to the plaintiff, credited the defendant with the amount of checks which the bank and the defendant agreed were forgeries, and, therefore, should not have been charged to the defendant. It is important to remember that when a person makes a deposit with a bank the title to the money passes to the bank, and the bank becomes the debtor of the depositor."

"A suit for money had and received is in the nature of an equitable action, and is maintainable whenever one person has money which ex æquo et bono belongs to another * * *. And it is not always necessary that actual money shall have been received. If property or anything else, be received as the equivalent of money by one who assumes to cancel or dispose of a property right, for which, by contract or liability, legal or equitable, it is his duty to account to another, the latter may treat the transaction as a receipt of money, and sue for it as such." Barnett v. Warren & Co., 82 Ala. 557, 2 So. 457, 459.

To support the action for money had and received, it is not an essential factor that there is privity of contract between the litigant parties. The law implies a promise to pay the person rightfully entitled to receive the money. 41 C.J., Sec. 18, p. 38; Levinshon v. Edwards, 79 Ala. 293; Hudson v. Scott et al., 125 Ala. 172, 28 So. 91.

The authorities also hold that credit is sufficient upon which to base the action. In A. Paul Goodall Real Estate & Ins. Co. v. North Birmingham American Bank, 225 Ala. 507, 144 So. 7, 9, Justice Brown writing for the Supreme Court, observed: "The credit received by the defendant, if it in fact credited itself with said check on the drawer's account, was, within the rule above stated, the equivalent of money, and it was liable as for money had and received." See, also, Bianconi v. Crowley et al., 256 Mass. 187, 152 N.E. 305.

Courts generally have committed themselves to the doctrine that the action for money had and received should not be labored with strict legal rules; that because of its equitable character great latitude should be permitted in its use; that it should be favored by our courts to the end that justice may be attained; that "what is just and right is the law of laws." Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363, 366; Allen v. M. Mendelsohn & Son, 207 Ala. 527, 93 So. 416, 31 A.L.R. 1063; Young et al. v. Garber, 149 Ala. 196, 42 So. 867.

■ Our considered conclusion is that under the factual issues in this case appellee sought an appropriate remedy. Authorities, supra. See, also, 41 C.J., Sec. 6, p. 32; Huckabee v. May, 14 Ala. 263.

Basing our conclusion on the evidence, we are unable to reconcile the amount of the judgment as found by the court below. According to our calculation, the total of the recovery against the company should be $853.85 principal sum.

It is therefore ordered that the judgment of the lower court be amended and fixed in the amount of $853.85.

With this correction the judgment of the primary court is affirmed.

Affirmed.

## On Rehearing

CARR, Judge.

In original brief, appellant's counsel, with very little emphasis, pointed out a statement the trial court made when he rendered judgment in favor of appellee. We examined the statement, but concluded that it found its way into the record on account of the alertness of the court reporter, and that it was not intended to be taken as including all of the reasons in the mind of the court why judgment should be thus rendered.

In order to present the matter fully, we quote here the entire colloquy:

"Court: The Court finds from the evidence that the Alabama Dry Dock and Shipbuilding Company has in its possession $917.76 which in equity and good conscience belongs to the Plaintiff and the Court gives judgment therefor. The Court thinks the evidence clearly shows the above amount to have been taken from the Plaintiff's account in the Merchants National Bank of Mobile and deposited to the credit of the Alabama Dry Dock and Shipbuilding Company, and there is no claim or counter-claim of recoupment or set off by the Alabama Dry Dock and Shipbuilding Company, though the evidence shows the Alabama Dry Dock and Shipbuilding Company to be possessed of this sum of $917.76, which in equity and good conscience belongs to the Plaintiff.

"Mr. Smith: I ask that the Court make a ruling on whether or not these checks are forgeries.

"Court: The Court has already announced judgment for the Plaintiff, then the attorney for the Defendant has asked for a special finding of fact after judgment has been pronounced.

"Mr. Smith: I know Your Honor's mind was made up against me from the beginning. I did and do ask Your Honor for a special finding of fact, upon which the Court bases his opinion.

"Court: I have stated that each one of these checks aggregating $917.76 were taken from the Plaintiff's account and placed to the Defendant's account and the evidence further shows that this amount of money is now in the hands of defendant.

"Mr. Smith: But Your Honor has not considered the finding of fact on the question of forgeries.

"Court: The Court has had a great many things in mind during these two days trial, and cannot remember every single mental process he went through, to arrive at his decision, but will state that in arriving at the judgment for the Plaintiff, the Court is of the opinion that it is immaterial as to the origin of the checks offered in evidence, whether forged or not, to evidence the amount of money that was taken from Plaintiff's account and credited to Defendant's account. In an action for money had and received, the Plaintiff makes out his case in making that proof, and there is no special plea of counter-claim or off set, but the defendant has only pleaded that it does not have the money. Therefore, the Court holds that Defendant does have the money and so finds."

In brief on application for rehearing we are again urged to consider this incident in the record and give particular attention to its purport. We are, of course, glad to do this and regret that the matter did not receive our more studious consideration heretofore.

We now entertain the view that this declaration of the trial judge indicates the basis for his conclusions, and we are with-

out authority or right to ignore the significance of the assertion.

It is evident that the court below, as to one phase of the case, did not consider it material as to whether or not the endorsements on the checks in question were forgeries. In this it is clear that he took an erroneous view of the law as applied to the factual issues in the case.

In our original opinion we failed to give proper consideration to this asserted misapplication of the law and indulged all the permissible presumptions in favor of the court as a trier of the facts without a jury. In this respect we were in error. Murphree v. Hanson et al., 197 Ala. 246, 72 So. 437; Fiquett v. Wade Electric Light & Power Co., 206 Ala. 630, 91 So. 357; Cox v. Somerville et al., 204 Ala. 261, 85 So. 525.

As indicated in the original opinion, the appellee's position rested on the factual premise that impostors fraudulently obtained the checks in question by representing themselves to be the payees and these same persons endorsed the names of the payees on the checks and induced the plaintiff to cash them. If the plaintiff below could have succeeded in making satisfactory proof of these facts, the court would have been authorized to find that there was not in effect legal forgery of the endorsements. This in recognition of the authoritative theory that a maker of a check intends that the person to whom he delivers the check has the right to convert it into cash.

In the preparation of our original opinion, we labored under a misapprehension of our task and concluded that there were reasonable inferences to be drawn from the evidence capable of supporting a finding by the trial judge that the endorsements were not legal forgeries. We accorded to his finding the force and effect of the verdict of a jury on the same evidence.

We come now, in the light of our belated views, to consider the judgment of the primary court without the application of the rule stated just above.

We have reread the record in this case and have again given attentive consideration to briefs of able counsel. We are forced to the conclusion that the reasonable inferences to be drawn from the evidence are not sufficiently strong and convincing to warrant our finding that the endorsements on the checks in question were not legal forgeries.

We have no difficulty in arriving at the conclusion that the endorsements were, in fact, forgeries. This is made clearly evident by an examination of the genuine signatures on checks tendered in evidence for comparison. We are aided also by the testimony of a handwriting expert, who testified that in his opinion the endorsements on the questioned checks are not the genuine signatures of the payees.

The evidence is silent with reference to the circumstances incident to the method or manner used in issuing and cashing any of the particular checks which form the basis for this suit, unless it can be said that they were handled in the way generally employed. However, there is testimony that plaintiff's assistants did not in every case follow this accustomed procedure. We think the whole evidence will bear a fair inference that these deviations from the prescribed rule occurred in exceptional cases. Nevertheless, we cannot escape the conviction that the evidence touching the instant inquiry does not exclude all other conditions and circumstances which could afford opportunity to make the endorsements legal forgeries.

We are here dealing with the theory of causation, and we have more than one plausible or ostensible explanation as to how the main event occurred or what occasioned it. The evidence points with logical sequence to more than one cause. We are faced with the task of making a selective application of one of them. It would be mere conjecture and surmise to hold one in higher estimate than another.

We do not feel that we should base a judgment on evidence so uncertain.

The conclusions we have reached make it unnecessary for us to further extend this opinion.

It is ordered that the application for rehearing be and the same is hereby grant-

ed; and it is further ordered that the judgment of affirmance be set aside, the judgment of the lower court be reversed and the cause remanded.

Application for rehearing granted.

Reversed and remanded.