ADAMS, Justice.
Two close friends and business associates found it necessary to bring their business disagreement to court. Rufus Webb, Jr., is an airplane pilot and Frank Martora-na is an entrepreneur. These men were accustomed to dealing in large sums— sometimes measured in cash and sometimes in gold. It is not unheard of in the world of high finance that deals are sometimes sealed with a mere handshake.
On October 7, 1980, Martorana wired Webb $20,000.00. The wire was from the Community Bank of Homestead, Florida, to be credited to the account of Rufus Webb, No. 14029, at the Eufaula Bank and Trust Company. There is nothing in the wire to indicate what was to be done with the money and it certainly was not signed by Webb, the party sought to be charged, but instead was signed by Frank Martorana. Martorana claims that he had an oral agreement with Webb that $15,000.00 of this money would be used to purchase an airplane which the parties would use to open a charter flight service in Eufaula.
On October 15, 1980, Webb purchased an airplane in his own name and filed an aircraft registration application. He also executed a note and security agreement on the airplane as president of his corporation, B.M. & R., and personally guaranteed payment of the indebtedness on the plane to Commercial Credit. The down payment on the airplane was $30,000.00 and the time balance was $155,000.00. Monthly payments were $3,213.67. According to Mar-torana, $5,000.00 of the $20,000.00 was to be used for operating capital. Webb claims that the $20,000.00 was payment to him by Martorana for work done by Webb in the Florida lime groves. Other witnesses testified that Webb had been paid for this work.
Martorana also testified that one of the principal incentives for the deal was the obtaining of tax write-offs. Webb was to obtain a tax write-off during the first year of the charter service and Martorana was *1364 to obtain the tax write-off the second year, alternating as their needs required. There was undisputed evidence that Webb obtained a tax write-off of $42,000.00 during the first year of the business arrangement and Martorana claimed a bad debt of $20,-000.00 during the same period.
Martorana claims that the fact that the title was in the name of Webb, or his corporation, was not inconsistent with the deal. The first year Webb would take the tax deduction and then he would allow Mar-torana to buy all the stock of the corporation and then Martorana would write the airplane off for the second year. It is undisputed that Webb had possession and use of the airplane from October 1980 until June 1981; however, the parties dispute who was making the payments during that period. Webb claims that he made all the payments and introduced evidence in the form of cancelled checks to back up his statement. Martorana claims he made one-half the payments.
According to Martorana, Webb called him in October 1981, and stated that he could not keep up the payments on the airplane and wanted to sell his one-half interest therein. Martorana agreed to purchase the one-half interest for $15,000.00 and sent Webb $10,000.00 and immediately following receipt of the $10,000.00, Webb delivered the airplane to Martorana.
The parties dispute as to the exact time when the remaining $5,000.00 was to be paid. Martorana claims that it was to be paid as soon as he received the paperwork transferring the airplane into his name. Webb claims that he was waiting for the $5,000.00 before he would make the transfer. The parties do agree, however, that Martorana alone made the payments for June, July, and August in the amount of $3,213.67 each. Martorana claims that although he was making these payments, he kept asking Webb when he would produce the papers giving him title to the airplane. He states that he had no inkling that Webb was not going to perform his promise, until September 1981, when Webb, without the benefit of any security agreement and even though the sale agreement was not in default, went to the airport in Florida and took possession of the airplane by cutting the prop lock and flying it back to Alabama.
During the time that Martorana had possession of the airplane, he performed what is known in aviation terms as an “annual.” This means that the airplane was completely examined for its airworthiness and any defect in the airplane was repaired. This cost Martorana some $7,500.00. Webb claims that during the time Martorana had the airplane, he logged some 40 hours of flying time — and that at $300.00 an hour Martorana owes him $12,000.00 if, in fact, he had no equitable or legal title to the airplane.
After Webb secured the airplane by repossession, it was stolen from Webb and taken to Mexico. It was during the time that it was still located in Mexico and in the hands of the Mexican government that Martorana filed suit in assumpsit against Webb, asking for all monies paid to him as a result of the gentlemen’s agreement, as well as the second agreement, and punitive damages for fraud in obtaining money from him under the pretense that he was to have a one-half interest in the airplane when, in fact, Webb never intended for him to have any interest in the airplane. Webb counterclaimed, claiming conversion by Martorana of the airplane and claiming damages because Martorana refused to turn over to Webb the airplane logs and manuals, thus diminishing the value of the airplane by at least $100,000.00. After a two and one-half day trial, the circuit court entered a judgment for Martorana in the amount of $39,641.01. The court gave no relief to the plaintiff in his claim for damages for fraud. The $39,641.01 represented $20,000.00 paid by Martorana on October 7, 1980, $10,000.00 paid in June 1981 and three full payments of $3,213.67 each paid in June, July, and August 1981. The court denied relief to Webb on his counterclaim.
*1365 Webb raises the following issues as grounds for reversal of the trial court’s judgment:
1. Was the original transaction of October 7,1980, between Mr. Webb and Mr. Martorana void and unenforceable because it violated the Statute of Frauds?
2. Did the statute of limitations, § 6-2-3, Code 1975, bar the plaintiffs cause of action for fraud?
3. Did the trial court err by ordering a refund of the money from Mr. Webb to Mr. Martorana for the second transaction entered into by said parties in June 1981?
4. Did the trial court err by failing to give Mr. Webb any relief on his counterclaim for detinue, conversion, and other relief?
We are of the opinion that this case is essentially a case governed by the ore ten-us rule and, therefore, that the trial court’s judgment in matters dealing with witnesses’ credibility is due to be affirmed.
Although Webb raises two serious legal claims, we are of the opinion that they have no applicability in this case, where the plaintiff has premised his theory of liability on common law assumpsit or money had and received.
Section 7-1-206, Code of Alabama 1975 (part of Alabama’s version of the Uniform Commercial Code), provides that:
“... a contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000.00 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter and is signed by the party against whom enforcement is sought or by his authorized agent.”
In addition, § 8-9-2, Code of Alabama, provides that:
“... every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
(1) every agreement which, by its terms, is not to be performed within one year from the making thereof....”
It is clear that the agreements involved in this case were for more than $5,000.00, and that the terms could not be performed within one year from the making thereof. Furthermore, they were not signed by a party to be charged, nor his authorized agent. Obviously, they are not in writing. But all of this is of no avail to the defendant. The plaintiff is not seeking to enforce the contract to get a one-half interest in the airplane, or to get a complete interest in the airplane as called for by the second agreement; the plaintiff seeks now to obtain all monies paid by him under an agreement which he says the defendant never intended to perform.
This court has been consistent in its policy of preventing a litigant from having his cake and eating it too. Here, the defendant obtained possession of, and had already claimed title to, the airplane. He will not be allowed to hide behind the Statute of Frauds to keep money admittedly received by him for the purpose of obtaining a legal interest in the airplane. This court said in Alabama Dry Dock & Shipbuilding Co. v. Ward, 32 Ala.App. 535, 540, 27 So.2d 710, 713 (1946):
Courts generally have committed themselves to the doctrine that the action for money had and received should not be labored with strict legal rules; that because of its equitable character great latitude should be permitted in its use; that it should be favored by our courts to the end that justice may be attained; that “what is just and right is the law of laws.” Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363, 366; Allen v. M. Mendelsohn & Son, 207 Ala. 527, 93 So. 416, 31 A.L.R. 1063; Young et at v. Garber, 149 Ala. 196, 42 So. 867.
The law gives to the party who has been deceived in a contract the right to rescind *1366 the contract and obtain the consideration offered. Here, pláintiff attempted to obtain the money paid, as well as punitive damages for the deceit. The court, in its judgment, only required a portion of the expenditures refunded. (It did not give any compensation for the $7,500.00 paid for the airplane’s annual.) It allowed no damages for the deceit, and plaintiff has not appealed to us on this point. We think, under the circumstances, that its judgment is more than just. See, also, Donald v. Reynolds, 228 Ala. 513, 154 So. 530 (1934); Johnson v. Maness, 241 Ala. 157, 1 So.2d 655 (1941); Looker v. Allen, 22 Ala.App. 305, 115 So. 147 (1928); 2 A. Corbin, Corbin On Contracts, Ch. 18 (1952).
Defendant also claims that the statute of limitations is applicable in this case. Alabama’s statute of limitations in a fraud action is one year. Defendant claims that since he put title to the airplane in his name on October 15,1980, and suit was not filed until October 26, 1981, plaintiff’s claim is barred by the statute of limitations. Webb says that a reasonable man would have known that he did not intend for Martorana to have one-half interest in the airplane when he put full title to the aircraft in his name alone. But another' view of this evidence is consistent with the nature of the deal entered into by the parties. Martorana stated that, essentially, the deal was one to obtain tax write-offs. If this is true, it may have been absolutely necessary that title not be in both names at the time the write-off was attempted. Inasmuch as it is obvious that the facts in this case are subject to more than one interpretation, we cannot say that the trial court abused its discretion in interpreting them in a way which is different from that urged by the defendant.
As we have previously stated, we believe that this case is essentially an ore tenus case. Our general rule holds that in a nonjury case presented ore tenus, a trial court will not be reversed unless its findings on the evidence are clearly and palpably wrong and to allow its judgment to stand would be manifestly unjust. First Alabama Bank v. Coker, 408 So.2d 510 (Ala.1982); Eagerton v. Courtaulds North America, Inc., 421 So.2d 104 (Ala.1982); Chism v. Hicks, 423 So.2d 143 (Ala.1982).
Some points were fairly close—for instance, the credit to be allowed for the alleged 40 hours of flying time logged by the aircraft while in the possession of Mar-torana. After reviewing the record in the case, we are of the opinion that this amount was not clearly established and, therefore, the trial judge had the authority to resolve the conflicting evidence in favor of Martorana. Many other factual conflicts were properly resolved by the trial judge.
After much consideration, we agree with the trial judge that if Webb is to have title to the airplane, exclusively, then Mar-torana is entitled to a return of his money. Consistent with this logic, Webb is also entitled to the logs and manuals, and the trial court is instructed to return them to defendant on due receipt of the mandate of this court.
For all of the above-stated reasons, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES and EMBRY, JJ., concur.