<hr />

[No. 6109. Decided July 20, 1906.]

JAMIESON & McFARLAND, *Respondent,* v. JOSEPH G. HEIM et al., *Appellants.*[1]

APPEAL—REVIEW—HARMLESS ERROR—PLEADINGS—STRIKING — ANSWER. The striking of parts of an affirmative defense, is without prejudice, where the trial was before the court without a jury; and as to the only material part of the answer stricken out, the court permitted the parties to fully try out the issue.

CORPORATIONS—POWERS—DEALING IN NEGOTIABLE PAPER—BILLS AND NOTES. A trading corporation has implied power to purchase and indorse bills and notes, in the absence of any prohibition thereof in its aritcles.

BILLS AND NOTES—BONA FIDE PURCHASERS—FRAUD—INCEPTION OF DRAFT. The fact that the payee of a draft induced its issuance to him by impersonating another person of the same name, and by forging such other person's name to another instrument, does not invalidate the draft in the hands of an innocent purchaser for value, there being no question, under the facts, that the draft was in fact intended for the payee thereof; since fraud in the inception of a draft does not invalidate it in the hands of an innocent holder in due course, who may recover from the drawer under Laws 1899, p. 350.

[1]Reported in 86 Pac. 165.

SAME—DEFENSES. Drawers of a draft, issued to a person fraudulently representing himself to be another person of the same name, are not equally innocent with *bona fide* purchasers of the draft from the fact that they knew the fraudulent payee, when they had no notice of the fraudulent inception of the draft.

SAME—EVIDENCE—SUFFICIENCY. In an action by purchasers of a draft, procured by the payee by impersonating another of the same name, the evidence is not sufficient to show that the holder had or should have had notice of the fraud, where it appears that the holder had had other transactions with the payee over which no trouble arose, although an officer of the holder admitted, from after-acquired information, knowledge of the unreliability of the payee, and although there were exhibited to the holder the same evidences that had deceived the drawer of the draft.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered November 20, 1905, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action by the indorsee of a draft to enforce payment against the drawer. Affirmed.

*H. W. B. Hewen* and *Chas. E. Miller,* for appellants.

*Sol Smith,* for respondent.

FULLERTON, J.—This is an action brought to recover upon a bank draft for $375, drawn by the appellants upon their correspondent at Tacoma, Washington, and held by the respondent under the indorsement of the payee named therein. The facts out of which the controversy arises are in substance these: In December, 1904, a person representing himself to be James Crosson presented to the appellants, who are bankers doing business at South Bend, in this state, a draft drawn by a Michigan bank upon a New York bank, payable to James Crosson, and offered to sell the same to them. The officers of the bank, being unacquainted with the person presenting the draft, declined to make the purchase, but informed him that they would buy the draft if he would find some responsible person with whom they were acquainted to indorse for him. A few days later Crosson appeared at the bank with a member of the firm of Neubert & Cooper, also of South Bend, and announced that he had sold the draft to

that firm. By arrangement with the bank, one hundred dollars was then advanced to Crosson on account of the purchase price, and an agreement entered into by which the remainder, less the bank's exchange charges and a small sum owing by Crosson to Neubert & Cooper, should be paid to him when the draft should be cashed by the bank in New York upon which it was drawn. The draft was thereupon indorsed by Crosson and by Neubert & Cooper, and left with the appellants, who also indorsed it and forwarded it to their New York correspondent for collection, which in due time reported that the draft had been paid.

On receipt of this information, the appellants reported the fact to Neubert & Cooper, who thereupon purchased of the appellants the draft in suit, being for the balance due Crosson, and forwarded it to him at an address he gave in the city of Seattle; he having in the meantime left South Bend, announcing that he was going to that city. Crosson received the draft in due time and for value indorsed it to the respondent. Shortly after this draft had been forwarded to Crosson, the appellants discovered that this James Crosson was not the person for whom the original draft was intended, and that they would be held liable on their indorsement. They thereupon notified their correspondent upon whom the last mentioned draft had been drawn not to pay it upon presentation. Payment of the draft was therefore refused by the drawee upon its presentation, and the holder of the draft brought this action to enforce its payment. The court allowed the respondent to recover, and this appeal is from the judgment entered in its favor.

The trial court, on motion of the respondent, struck out certain paragraphs of the affirmative defense in the appellants' answer, and the first assignment of error is based on an exception taken to the order made with reference thereto. We think, however, the court committed no reversible error in its ruling. Some parts of the stricken portion of the answer might have been properly left therein as matter of

introduction or inducement to the part the court did allow to remain, but since the action was tried by the court without a jury, and all of the evidence the appellants offered on the question is in the record, no prejudice arises from the ruling. The only material part of the separate answer was the allega- tion to the effect that the respondent was not a holder in due course of the draft in suit, and hence took it subject to such defenses as could be made against the payee. This question the court permitted the parties to fully try out, and no differ- ent result would have been obtained had the court ruled on the motion as the appellants contend he should have done.

It is next objected that the respondent was without power under its articles of incorporation to deal in commercial paper, and that it could not for that reason acquire title to the draft in question by indorsement, and hence cannot claim to be a holder in due course. The respondent's articles of incorporation, it is true, show it to be organized for the pur- pose of carrying on a business not necessarily connected with the business of dealing in commercial paper, but it is never- theless a trading corporation, and as such it has implied power to purchase and indorse bills and notes, in the absence of anything in its articles of incorporation prohibiting it.    10 Cyc. 1118.

The third contention of the appellants is that the draft in suit was taken on a forged indorsement, and that the respond- ent cannot recover for that reason. This contention is founded on the claim that the draft in suit was intended for and was payable to the James Crosson named in the original draft. But plainly there is no foundation for this claim. There is no question that this draft was intended for the person who indorsed it to the respondent. It may be that the appellants were deceived—it may be that they believed that this James Crosson was the James Crosson named in the original draft, and that they issued this draft payable to his order on the faith of that belief—but the fact remains that they made it payable to, and intended that it should be delivered to, the

James Crosson who actually received it, and who indorsed it to the appellants. True, the James Crosson to whom the draft was payable induced the appellants to issue it to him by impersonating another of the same name, and by forging that other person's name to another draft, but this was only the fraudulent means by which he procured the issuance of the draft to himself, and it was no less intended for him and payable to him than it would have been had it been procured by fraudulent devices other than those of forgery and false impersonation. If, therefore, the respondent purchased the draft for value and without notice of any infirmity in the title to the instrument in the James Crosson who procured its issuance, it has good title, and can recover against the drawer without regard to the nature of the fraud by which its issuance was procured. Negotiable Instruments Act, § 52. (Laws 1899, p. 350.)

It is next insisted that, inasmuch as the draft was procured by circumvention and fraud, it was invalid from its inception, and the appellants by its issuance incurred no liability thereon, even to a holder in due course. That this contention is contrary to the rule of the Negotiable Instruments Act requires no argument to demonstrate, but it is said that this court so held in the case of *Yakima Valley Bank v. McAllister*, 37 Wash. 566, 79 Pac. 1119. An examination of that case, however, will show that it does not support this contention. There the only question submitted to the jury was whether or not the defendant had actually indorsed the note in suit; it being conceded that, notwithstanding its fraudulent procurement, the indorser was liable thereon if he had in fact indorsed it. See pages 574-575 of the opinion. It was not determined that one could defend against his negotiable paper in the hands of a holder in due course, by simply showing that he had been induced to issue it through the fraud of the payee named therein.

It is next said that there can be no recovery because the parties are equally innocent, and there was no consideration

for the issuance of the draft. But it seems to us that the first part of the contention is against the weight of the evidence, and that the second, even if true, is immaterial. As between the respondent and the appellants, the only party who could possibly have guarded against the fraud was the appellants. The draft in suit was issued because of their lack of diligence, and theirs only. The respondent became connected with it only after it had been issued, and it owed the appellants no legal or moral duty to inquire into the facts which preceded or which led up to its issuance. So, also, if the appellants were led to issue the draft without consideration, they must bear the loss, since the fault was their own.

It is insisted finally that the evidence did not justify the findings of the court. But on this question, also, we think the record is against the appellants. The only room for dispute at all is over the question whether or not the respondent knew, or ought to have known, of the infirmities existing in the instrument at the time it purchased it. James Crosson, the payee named in the original draft, did testify that in a conversation he had with an officer of the respondent, after payment of the draft in suit had been refused, the officer, while speaking of the other James Crosson, said that he "knew he was a bad boy;" implying that he knew of his unreliability prior to purchasing the draft. The officer, however, while admitting the use of the words, gives a different version of the conversation. He testified that while investigating the matter he met and talked with the witness and became convinced that a crime had been committed, and made the remark with reference to his after-acquired knowledge, not because of anything that he knew of him prior to that time. On the contrary, he testified that he had known the Crosson from whom the draft was purchased for about four years; that he had, on a number of occasions, cashed on his behalf and at his request small drafts and checks over which no trouble arose; and that he never heard of anything wrong concerning

him. He, too, moreover, was shown the evidences Crosson had used to deceive the appellants, and like them believed they were genuine. On the whole we do not think there is the slightest ground to impugn the good faith of the respondent, and that it, being a holder of the draft in due course within the meaning of the Negotiable Instruments Act, is entitled to recover.

The judgment is affirmed.

MOUNT, C. J., HADLEY, RUDKIN, ROOT, CROW, and DUNBAR, JJ., concur.