Bank v. Schaefer.

No. 21,465.

THE LYON COUNTY STATE BANK, *Appellee*, v. GEORGE SCHAEFER, *Appellant*.

SYLLABUS BY THE COURT.

1. BANKING—*Sight Draft Deposited for Collection—Dishonored—Relation of Bank to Depositor—Parol Evidence.* Between the original parties—the nominal drawer of a dishonored sight draft, the party for whose benefit the draft was drawn and deposited in a bank for collection, and the bank which honored the checks of such depositor drawn in anticipation of the draft being collected—parol evidence is competent in an action by the bank against the depositor to show the relationship of the parties and the nature and conditions of the deposit.

2. SAME—*Dishonored Sight Draft—Liability of Depositor Thereof.* Ordinarily when a bank gives credit to a depositor on the faith of a sight draft deposited to his account, and such sight draft is dishonored, the bank·may charge back to the depositor the amount of the dishonored draft; and if his *bona fide* deposit account is insufficient to meet it, and he refuses to reimburse the bank, the latter may recover judgment against him for the sum involved in the transaction.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed April 6, 1918. Affirmed.

*S. S. Spencer,* and *I. T. Richardson,* both of Emporia, for the appellant.

*Owen S. Samuel,* and *Oscar B. Hartley,* both of Emporia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This lawsuit is to determine a liability on a sight draft which was not paid.

The Lyon County Farmers' Produce Association is a voluntary organization designed to bring together the producers and consumers of agricultural products, for which service the association charges a small commission. Anton Ptacek is its manager. The defendant, George Schaefer, is a producer of hay. Through arrangements made by the association, Schaefer shipped a consignment of hay to a man in Iowa. He gave the bill of lading to Ptacek, who drew a sight draft on the consignee payable to the plaintiff bank, and the bank forwarded

the bill of lading with the draft attached for collection. The bank placed the face amount of the draft (less the association's commission) to the credit of Schaefer, and he checked it out. The draft was .dishonored, and Schaefer declined to reimburse the bank.

The trial court made findings of fact and rendered judgment for the bank. The findings read:

"First: On or about April 4th, 1915, one Anton Ptacek left with the plaintiff for collection, four sight drafts with bill of lading attached, representing separate shipments of hay the proceeds to be credited to defendant by said Bank, except a small commission to be credited to Ptacek.

"Second: One of said drafts was for $139.57. This draft was sent to the Kansas City, Missouri, correspondent of plaintiff, and on April 7th it received notice from its correspondent that it had been credited with said amount, subject to collection, and said amount was credited by plaintiff, subject to collections as follows: $136.22 to defendant's account, and $2.35 as commission to the account of Ptacek.

"Third: Said draft was drawn on one Huddleson, of Fontanelle, Iowa.

"Fourth: Before a report was had by plaintiff on the collection of said draft, defendant came to plaintiff bank and asked that he be permitted to check against the proceeds as he was in need of funds, and was given such permission on agreement between defendant and bank that in case said draft was not honored, defendant's account was to be charged with the amount and that defendant would reimburse plaintiff. The exact date of this transaction is not ascertainable from the evidence.

"Fifth: At a later date and about April 20, 1915, defendant came to said Bank with a postal card advising defendant that said hay had been rejected, and asked Mr. Price, President of the plaintiff Bank, what he should do about the matter, and said Price informed defendant that plaintiff had not been advised whether said draft had been paid but if same were dishonored the amount would be charged to defendant's account in case collection was not made and defendant agreed that this should be done.

"Sixth: All of said drafts were collected and passed to defendant's account on the books of said bank, except the Huddleson draft, which was dishonored, and plaintiff was unable to make collection of any part thereof.

"Seventh: Defendant overdrew his account with said bank in the sum of $136.22, under the arrangement as hereinbefore set out in these findings. Afterward in another transaction said account of defendant was credited with $2.29, leaving a balance due and owing plaintiff from defendant $133.93."

Defendant's principal contention on appeal is that there was no competent evidence to support the second finding. The court discerns no difficulty on that point. Ptacek, the man who de-

livered the draft to the bank, was defendant's agent in so doing, and he told the bank what disposition to make of it. This evidence was competent. (*McWhirt v. McKee*, 6 Kan. 412, syl. ¶ 1; *Lovejoy v. Citizens' Bank*, 23 Kan. 331, syl. ¶ 2; *Ellicott, Assignee, v. Barnes*, 31 Kan. 170, syl. ¶ 2, 1 Pac. 767; *Talcott v. National Bank*, 53 Kan. 480, 36 Pac. 1066; *Hough v. First Nat. Bank*, 173 Iowa, 48; *Branch v. Dawson*, 36 Minn. 193; 7 C. J. 639.)

Furthermore, there was competent evidence showing that Schaefer asked and received permission from the bank to check against the draft deposit before the bank had received the returns on it, and this was upon Schaefer's agreement that if the draft was dishonored he would "make it all right." While Schaefer denies this, this court cannot do otherwise than to accept as true the trial court's determination of that disputed fact. (*Bruington v. Wagoner*, 100 Kan. 439, 164 Pac. 1057.) Even if there was no literal agreement between the bank and Schaefer to "make it all right," the law would infer such an agreement and impose such a liability on Schaefer. The general rule appears to be that, where the interests of innocent third parties are not affected, a bank has the right to charge back a dishonored draft which has been credited to a depositor's account as cash. Credit extended to a depositor in anticipation of collection of a draft is ordinarily deemed provisional, and the bank may cancel the credit or charge back the paper to the depositor's account, if it is not paid. (*Prescott v. Leonard*, 32 Kan. 142, 4 Pac. 172; *Noble v. Doughten*, 72 Kan. 336, 345, 346, 83 Pac. 1048; *City of Philadelphia v. Eckels*, 98 Fed. 485; *First National Bank v. McMillan*, 15 Ga. App. 319; *Ayres v. The Farmers & Merchants Bank*, 79 Mo. 421; *Hendley v. Globe Refinery Co.*, 106 Mo. App. 20; *Jacob v. First National Bank*, 5 Ohio Dec. 572; *Rapp v. National Bank*, 136 Pa. St. 426; 7 C. J. 633.)

Counsel presents a line of argument based on the assumption that the obligation to reimburse the bank was on Ptacek, and not on Schaefer, and that Schaefer's promise to "make it all right" was an unenforceable oral promise to answer for Ptacek's debt. But between the original parties, Schaefer, Ptacek, and the bank, there was no debt, no liability on the part of Ptacek. The mere form of the draft was not important.

The true relationship of the parties was a proper subject of judicial inquiry. (3 R. C. L. 1122, 1123.) Ptacek, or Ptacek's produce association, was only the nominal drawer of the draft; it was drawn in Schaefer's behalf, and he received the benefits of it from the bank. (Gen. Stat. 1915, § 6588; 3 R. C. L. 1140.) It was to "make it all right" on a transaction of his own, not Ptacek's, that Schaefer made the promise.

Aside from the brief of his counsel, the defendant addresses a personal letter to the court, urging matters which a supreme court has no right to consider. Doubtless the defendant did not understand that the case we have to review is the one which was tried by the district court, and that we have no authority to make an independent investigation of the matter. But we can only examine the record which the appellant has brought to this court. It is only with alleged errors made in the trial court that the supreme court has to deal, and no error made by the trial court in this case is shown in the record. Consequently the judgment must be affirmed, and it is so ordered.