(June 2, 1923.)

JOHN URIOLA, Appellant, v. TWIN FALLS BANK & TRUST COMPANY, a Corporation, Respondent.

[215 Pac. 1080.]

NEGOTIABLE INSTRUMENTS—INTENT OF DRAWER—LIABILITY OF INDORSER — INNOCENT HOLDERS — IMPOSTOR AS PAYEE — NEGLIGENCE OF DRAWER—LIABILITY.

1. Where a party purchases a draft from a bank made payable to a designated payee, the intent of the purchaser as to the payee becomes the intent of the bank.

2. A bank is not liable for the payment of a draft on a forged indorsement, where the person committing the forgery

Publisher's Note.
2. Who must bear loss when check or bill is issued or indorsed to impostor, see notes 22 A. L. R. 1228; 50 L. R. A. 75; 17 L. R. A., N. S., 514; 38 L. R. A., N. S., 1111.

and receiving the money was in fact the person to whom the drawer delivered the instrument, whom he believed to be the payee named, and who was the individual intended to receive the same.

3. Where the drawer of a check delivers it, for a consideration which turns out to be fraudulent, to an impostor under the belief that he is the person whose name he has assumed and to whose order the check is made payable, a *bona fide* holder for a valuable consideration who paid the imposter upon his indorsement of the payee's name is entitled to recover from the drawer; it appearing that the person to whom the check was delivered was the very person whom the drawer intended should indorse it and receive the money, and that the drawer made no inquiry concerning the identity or credit of the named payee, who was unknown to the drawer.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action by plaintiff to recover money charged against his account by defendant bank. From judgment for defendant, plaintiff appeals. *Reversed* and *remanded,* with instructions.

E. M. Wolfe and J. F. Martin, for Appellant.

When a draft is made payable, and delivered to an impostor by the drawer of such draft, and the draft comes into the hands of an innocent purchaser for value and without notice, the drawer must stand the loss as between it and the innocent purchaser. (*Hoffman v. American Exchange Nat. Bank,* 2 Neb. (Unof.) 217, 96 N. W. 112; *Montgomery Garage Co. v. Manufacturers' Liability Co.,* 94 N. J. L. 152, 109 Atl. 296, 22 A. L. R. 1224, and cases cited; *Robertson v. Coleman,* 141 Mass. 231, 55 Am. Rep. 471, 4 N. E. 619; *McHenry v. Old Citizens' Nat. Bank,* 85 Ohio St. 203, 97 N. E. 395, 38 L. R. A., N. S., 1111; see notes, 50 L. R. A. 75; 17 L. R. A., N. S., 514; 38 L. R. A., N. S., 1111; Brannon's Negotiable Instrument Law, 3d ed., pp. 87–89, 468–471, 498–504.)

The indorsement of an impostor upon a check passes good title to the check to an innocent purchaser. (*Robertson v. Coleman, supra; Land Title & Trust Co. v. Northwestern Nat. Bank,* 196 Pa. St. 230, 79 Am. St. 717, 46 Atl. 420, 50 L. R. A. 75, and cases cited.)

Frank L. Stephan, for Respondent.

Respondent bank had the right as a matter of law to cancel the credit and charge back to the account of the appellant the amount of its loss. (3 R. C. L. 522; 7 C. J. 633; *Bailie v. Augusta Savings Bank,* 95 Ga. 277, 51 Am. St. 74, 21 S. E. 717; *Blake v. Hamilton Dime Sav. Bank Co.,* 79 Ohio St. 189, 128 Am. St. 684, 16 Ann. Cas. 210, 87 N. E. 73, 20 L. R. A., N. S., 290; *National Gold Bank & Trust Co. v. McDonald,* 51 Cal. 64, 21 Am. Rep. 697; *Ocean Park Bank v. Rogers,* 6 Cal. App. 678, 92 Pac. 879; *Lyon County State Bank v. Schaffer,* 102 Kan. 868, 171 Pac. 1159; *Belsheim v. First Nat. Bank of White Salmon,* 77 Wash. 552, 137 Pac. 1055.)

Appellant's right to recover the credit given him by respondent bank is defeated by the forged indorsement of the payee's name. (C. S., sec. 5890; 7 C. J. 636; 5 R. C. L. 564; Crawford on Negotiable Instruments, p. 57; *First Nat. Bank of Chicago v. Northwestern Nat. Bank,* 152 Ill. 276, 43 Am. St. 247, 38 N. E. 739, 26 L. R. A. 289; *People's Bank v. Franklin Bank,* 88 Tenn. 299, 17 Am. St. 884, 12 S. W. 716, 6 L. R. A. 724; 3 R. C. L. 1296.)

As between appellant and respondent, appellant was the less diligent and should bear the loss resulting from his negligence. (*Heim v. Neubert,* 48 Wash. 587, 94 Pac. 104; *People's Bank v. Franklin Bank, supra.*)

A forged indorsement is wholly inoperative and does not convey title to the instrument. (*Tolman v. American Nat. Bank,* 22 R. I. 462, 84 Am. St. 850, 48 Atl. 480, 52 L. R. A. 877; *Shipman v. Bank of State of New York,* 126 N. Y. 318, 22 Am. St. 821, 27 N. E. 371, 12 L. R. A. 791; *Armstrong v. Pomeroy Nat. Bank,* 46 Ohio St. 512; *Jordan*

*Marsh Co. v. Shawmut Nat. Bank,* 201 Mass. 397, 87 N. E. 740, 22 L. R. A., N. S., 250; *First Nat. Bank of Chicago v. Pease,* 168 Ill. 40, 48 N. E. 160; *Seaboard Nat. Bank v. National Bank of America,* 193 N. Y. 26, 85 N. E. 829, 22 L. R. A., N. S., 499.)

GIVENS, Commissioner.—This case was submitted upon stipulated facts found in the findings of fact and conclusions of law, as follows:

"That prior to the 20th day of August, 1920, J. Kawai stole from U. Watanabe, of Shoshone, Idaho, a certain time certificate of deposit, of the approximate value of $500. That thereafter the said J. Kawai assumed the name of U. Watanabe and held himself out as the owner of said certificate of deposit. That under such assumed name, he rented a room at the Plaintiff's rooming house, registering as U. Watanabe, and was known to the plaintiff by said name. That he rented a post-office box, number 298, at the Twin Falls Post Office under the said name of U. Watanabe, and received his mail through said post-office box under said name.

"That thereafter the said J. Kawai wrote one Henry Betsun, of Salt Lake City, Utah, who was engaged in the business of loaning money, enclosing said certificate of deposit which he had stolen from U. Watanabe, and requesting a loan thereon, and signed the same 'U. Watanabe,' and sending for the return address the post office box number 298, which he had rented under said name at the Twin Falls Post Office. That the said Henry Betsun, answering said letter, addressing the same to the address as directed, as stated above, returned the said certificate of deposit, and also enclosed a blank application for a loan to be filled out by the applicant. That J. Kawai filled out said application and signed same 'U. Watanabe,' and returned it to the said Henry Betsun, in Salt Lake City, together with the said certificate of deposit; and upon receipt thereof the said Henry Betsun purchased from the Utah State National Bank, of Salt Lake City, Utah, a Cashier's check made payable to

U. Watanabe, for the sum of $400, a copy of which is attached to defendant's answer herein, and forwarded the same to the said J. Kawai by mail, addressed to U. Watanabe, in care of the said post office box rented by the said J. Kawai under the name of U. Watanabe.

"That after the said J. Kawai received the said cashier's check he endorsed thereon the name of U. Watanabe and delivered the same to the plaintiff. That thereafter the plaintiff endorsed said cashier's check and deposited the same with the defendant bank; that the same was paid on the 25th day of August, 1920, by the Utah State National Bank, of Salt Lake City, the maker thereof. That it was later discovered that the said J. Kawai was not the owner of said time certificate of deposit, but that he had stolen the same; whereupon, on the 24th day of September, 1920, the defendant bank charged the plaintiff's account with $400, without his consent and against his will. That the said bank immediately notified the said plaintiff of such charge.

"That neither the plaintiff nor the defendant had any notice or knowledge of any of the wrongful acts of the said J. Kawai, and that the plaintiff, Uriola, was an innocent purchaser of the said cashier's check. . . . .

"That the said J. Kawai was charged with the crime of forgery, and more particularly, with forging the name of U. Watanabe upon the back of the said cashier's check, and was convicted of the said crime."

Plaintiff, appellant, sued the bank, respondent, for the $400 thus charged against his account. While it might appear from the stipulation that the issues were between appellant and respondent only, two innocent holders, nevertheless we must go further in order to find the facts upon which the bank based its right to charge the $400 against appellant's account.

The bank must have paid the $400 to the Utah State National Bank, the maker of the cashier's check in question, and the Salt Lake Bank must have in turn reimbursed Betsun for the $400 paid by him to the Salt Lake bank in the purchase of said check, before the respondent would have

been in a position to demand the return of the money paid to appellant. If respondent has not thus repaid Betsun, it has sustained no loss and had no right to charge the $400 to appellant, and hence has no defense at all.

The return of the money through these channels to Betsun would be based upon the conclusion that the indorsement by Kawai, impersonating Watanabe, on the cashier's check sent Kawai by Betsun, payable to U. Watanabe, and cashed by appellant for Kawai, was a forgery. Unless Betsun had a valid claim against the Utah State National Bank for the return of his money, the Salt Lake bank had no valid claim against the Twin Falls bank, and the Twin Falls bank had no right to make a charge therefor against appellant's account. The rights of Betsun and Uriola are the determinative factors.

"Generally a bank is not bound to know the signature of the indorser of a check, and, if it pays a check on a forged indorsement, it can recover the money of the party to whom it was paid, if it proceeds promptly on discovery of the fraud. This is upon the principle that the indorsement of a check is an implied warranty of the genuineness of the previous indorsements. But, in order that a bank may recover, it must appear that it has sustained a loss. If it can charge the payment to the account of the depositor, it has lost nothing, and has no cause of action. The question is, then, the same, whether we consider the check as having been drawn by an ordinary depositor in the trust company, or as having been drawn, as it was, by the real estate department of the company, on the banking department. While, as between the bank and the trust company, as a banker the former is bound by its implied warranty of the indorsement, still there is no cause of action unless the payment of the check was not, as against the drawer of the check, a good payment. The reason of the rule that when a bank pays a depositor's check on a forged indorsement, or a raised check, it is held to have paid it out of its own funds, and cannot charge the payment to the depositor's account, is that there is an implied agreement by the bank with its depositor, that it will not disburse the money stand-

37 Idaho.—22

ing to his credit, except on his order. The rule applies, where a check has been lost or stolen and the payee's name has afterwards been forged; but it does not protect a depositor who is in fault, as in intrusting a check to one who he has reason to suppose will make a fraudulent use of it, or in so carelessly filling up a check that it may readily be altered, or in issuing a check to a fictitious person. It is confined to cases in which the depositor has done nothing to increase the risk of the bank. It should not apply when the check is issued to one whom the drawer intends to designate as the payee; First, because in such a case the risk is not the ordinary risk assumed by the bank in its implied contract with its depositor, but a largely increased risk, as it follows that a check thus fraudulently obtained will be fraudulently used. The bank is deprived of the protection afforded by the fact that a *bona fide* holder of a check will exercise care to preserve it from loss or theft, which are the ordinary risks. There is thrown on the bank the risk of antecedent fraud practiced upon the drawer of the check, of which it has neither knowledge nor means of knowledge; secondly, because in such a case the intention with which the drawer issued the check has been carried out; the person has been paid to whom he intended payment should be made; there has been no mistake of fact, except the mistake which he made when he issued the check, and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error, into which he was led by the deception previously practiced upon him." (*Land Title & Trust Co. v. Northwestern Nat. Bank*, 196 Pa. St. 230, 79 Am. St. 717, 46 Atl. 420, 50 L. R. A. 75, at 79, 80, and cases cited in the notes in the last two citations.)

The real issue, then, is upon the following question, namely: Where an impostor assumed the name of another person (Kawai assuming the name of Watanabe) and thereby induces a third party (Betsun) to believe that he is the person whose name is assumed, and acting on such belief, such third person (Betsun) purchases a draft designating the payee by the name assumed by the impostor

(Watanabe, assumed by Kawai) and delivers it to such impostor (Kawai, by mail from Salt Lake City), intending to deal with the impostor, not knowing there is a real person as distinguished from the impostor, and the impostor (Kawai) indorses the draft (which was done by Kawai when Uriola cashed it for him), using such assumed name, and transfers it to an innocent purchaser (Uriola), must the loss fall on the maker or the indorser, as purchaser, both maker and indorser being innocent of the imposition at the time of the transaction?

In this proposition two questions are involved: First, the relative responsibilities of Betsun and Uriola; second, the right of the Twin Falls bank to recover the money from Uriola, dependent upon the relative legal rights of Betsun and Uriola.

As to the first proposition, respondent cites the case of *Tolman v. American Nat. Bank*, 22 R. I. 462, 84 Am. St. 850, 48 Atl. 480, 52 L. R. A. 877, to the effect that Uriola must bear the loss. The facts in that case and this are different in two particulars: first, in the case at bar, the indorsement by Uriola to the Twin Falls Bank; second, in the above-mentioned case the court comes to its conclusion adverse to appellant herein upon the following fact not in the case at bar, namely: "The plaintiff made inquiry, and finding that Haskell was employed, and was living as represented, he agreed to make the loan. Potter, under the name of Haskell, gave his note to the plaintiff, and the plaintiff gave him a check on the defendant payable to the order of Haskell, delivering it to Potter, supposing him to be Haskell," which fact controlled the decision, for the court said: "In this case the money was intended for Haskell, because his was the only name suggested. He had been looked up, and found to be responsible. It is a perversion of words to say that it was intended for Potter simply because he had fraudulently impersonated Haskell, and led the plaintiff to believe that he was Haskell. The plaintiff did not intend to let Potter have money. His check showed who was to have it, because it was made payable to Haskell. When,

therefore, Potter fraudulently endorsed Haskell's name on the check, it was a typical case of forgery. It was a false signature, with intent to deceive.''

To make the *Tolman v. American Nat. Bank* case applicable here, it would have been necessary for Betsun to investigate and ascertain that there was a true Watanabe and thereafter have dealt with Kawai under the belief that he was dealing with Watanabe.

In commenting upon the Tolman case, in connection with similar situations, and differentiating its applicability to the situation under discussion here, other courts have held that the intent of the maker as to the correct payee is to govern.

''Intent of the drawer is the test, and this intention must necessarily arise from knowledge and exist as an affirmative fact in the mind of the drawer at the time of the delivery of the paper.'' (*American Express Co. v. People's Savings Bank,* 192 Iowa, 366, 369, 181 N. W. 701, at 703; *Seaboard Nat. Bank v. National Bank of America,* 193 N. Y. 26, 85 N. E. 829, 22 L. R. A., N. S., 499; *Grand Lodge etc. v. Emporia Nat. Bank,* 101 Kan. 369, 166 Pac. 490.)

The rule is recognized as the controlling criterion by *Shipman v. Bank of State of New York,* 126 N. Y. 318, 22 Am. St. 821, 27 N. E. 371, 12 L. R. A. 791, cited by respondent.

*Tolman v. American Exchange Bank, supra,* is shown to be entirely inapplicable to the facts as they exist in the case at bar, by numerous authorities in line with the present decision, among others the following: *Jamieson v. Heim,* 43 Wash. 153, 86 Pac. 165; *Heavy v. Bank,* 27 Utah, 222, 101 Am. St. 966, 75 Pac. 727; *Boatsman v. Stockmen's Nat. Bank,* 56 Colo. 495, 138 Pac. 764, 50 L. R. A., N. S., 107; *McHenry v. National Bank,* 85 Ohio St. 203, 97 N. E. 395, 38 L. R. A., N. S., 1111; *Sherman v. Corn Exch. Nat. Bank,* 91 App. Div. 84, 86 N. Y. Supp. 341. In Brannan's Negotiable Instruments Law, page 87, after construing these cases, the author makes the following analysis of the situation involved (p. 89):

''In these fraudulent impersonation cases, the maker or drawer of the instrument may be said to have a double in-

tent.  First, he intends to make the instrument payable to the person before him or to the person writing at the other end of the line, in case the negotiation is by correspondence. Second, he intends to make the instrument payable to the person whom he believes the stranger to be.  The courts have almost unanimously held that the first is the controlling intent except where the named payee was already known to the maker or drawer, . . . . or was more particularly identified in some manner, e. g., by some designation, description or title . . . . in which cases the courts treat the second as the controlling intent.''

There are also collated in said volume learned discussions upon the principle herein involved by Professor Ames, Judge Brewster and Mr. McKeehan, at pp. 468–471 and 498–504, the conclusion as herein indicated being reached.

While it is true that the maker of the draft in question was the Utah State National Bank, it was Betsun's intent that must govern, because the bank made the draft payable to the party designated by Betsun.  The Salt Lake bank's intent was to make the draft payable to the party that Betsun intended it to be payable to.  (*First Nat. Bank of Fort Worth, Tex., v. American Exch. Nat. Bank,* 49 App. Div. 349, 63 N. Y. Supp. 58; Id., 170 N. Y. 88, 62 N. E. 1089; 14 Harvard Law Rev. 60.)  What was Betsun's intent?  It was to have the money paid to Kawai, under the name of Watanabe; the name Watanabe, but the person or individual Kawai.  Uriola, by his indorsement, identified the individual Kawai as Watanabe, in perfect accord with Betsun's intention, because the individual identified as Watanabe by Uriola was the individual Betsun intended should receive the money.  Betsun had no knowledge of any other person than Kawai as being Watanabe, and intended nothing so far as anyone except Kawai was concerned.

As stated in *United States v. Chase Nat. Bank,* 241 Fed. 535: ''If the maker really intends to make the forger payee, even under a false name, his indorsement (the impostor's) is good.''

The strongest rule in favor of respondent is that payment was to be made only to the person authorized to receive the same under the language of the check: *Jordan Marsh Co. v. Shawmut Nat. Bank,* 201 Mass. 397, 87 N. E. 740, 22 L. R. A., N. S., 250. The real Watanabe was clearly not entitled to receive or cash the check. True, the original security upon which the check was based belonged to the real Watanabe, but so far as the transaction between the Twin Falls bank and Uriola, between Betsun, the two banks and Uriola, and as to Betsun purchasing and sending the check to Kawai, the real Watanabe was a stranger, and no more entitled to receive or cash the draft. So far as the real intention of Betsun and the Salt Lake bank was concerned, if Uriola had indorsed the draft upon the signature of the real Watanabe, it would have been a false indorsement, because he would not have been indorsing payment to the party contemplated by Betsun and the Salt Lake bank as their payee. The indorsement by appellant of the check sent by Betsun was regular in every way, except that Kawai had previously deceived Betsun. If Kawai indorsed the name of Watanabe on the $500 sent Betsun as security, that was a forgery, but the most that can be said if the two transactions are considered together, and unless they are there can be no taint of fraud or forgery in the second, is that Betsun's security for the loan was worthless, but appellant was in no way responsible for this.

*Heim v. Neubert,* 48 Wash. 587, 94 Pac. 104, *Jordan Marsh Co. v. Shawmut Nat. Bank, supra,* and similar authorities cited in respondent's brief are to be distinguished on the question of a difference of intent as to payee. This distinction is clearly elucidated in the following:

"The plaintiff, in support of his contention that the defendant, 'having permitted the checks by mistake to come into the hands of the impostors,' who wrongfully received them, and without authority and by forgery indorsed them 'to a *bona fide* holder, is liable to such holder for the payment of the same'—cites: *United States v. National Exch. Bank* (C. C.), 45 Fed. 163; *National Bank v. Shotwell,* 35

Kan. 360, 11 Pac. 141; *Crippen Lawrence & Co. v. American
Nat. Bank*, 51 Mo. App. 508; *Meridian Nat. Bank etc. v.
First Nat. Bank*, 7 Ind. App. 322, 52 Am. St. 450, 33 N. E.
247, 34 N. E. 608; *Robertson v. Coleman*, 141 Mass. 231,
55 Am. Rep. 471, 4 N. E. 619; *Maloney v. Clark*, 6 Kan. 83;
*E. S. Karoly Co. v. Globe Savings Bank*, 64 Ill. App. 225;
*Famous Shoe & Clothing Co. v. Crosswhite*, 124 Mo. 34, 46
Am. St. 424, 27 S. W. 397, 26 L. R. A. 568; *Fiore v. Ladd
& Tilton*, 22 Or. 202, 29 Pac. 435, and *McHenry v. Old
Citizen's Nat. Bank*, 85 Ohio St. 203, 97 N. E. 395, 38
L. R. A., N. S., 1111. We think the cases are not appli-
cable for the principal reason that in nearly all of them the
person to whom the check or instrument was delivered was
the very person whom the drawer intended should present
and indorse it and receive the money evidenced by it, or
with whom the transaction was had with respect to which
the check was given, or where recovery was permitted on the
ground of negligence or an estoppel. These elements are
not here present." (*Simpson v. Denver & R. G. R. Co.*, 43
Utah, 105, 134 Pac. 883, 46 L. R. A., N. S., 1164.)

It is a pure fiction to contend that Betsun and the Twin
Falls bank intended to deal with the man who was the legal
owner of the original certificate of deposit, as distinguished
from Kawai, they did not know that Kawai was not such
legal owner, and Betsun set in motion the machinery which
resulted in the loss, and Betsun and the Salt Lake bank
were dealing with Kawai as an individual and payee, and as
to them, and their intent with regard to the instrument in
question, Uriola's indorsement was absolutely correct, and
hence as between Uriola and the Twin Falls bank, his in-
dorsement was correct.

As we have indicated above, Betsun is the real drawer,
and where a draft is made payable and delivered to an im-
postor by the drawer of such draft, the drawer intending it
to be paid to such impostor, and it is so paid, and the draft
comes into the hands of an innocent purchaser for value and
without notice, the drawer must stand the loss as between

him and the innocent purchaser. *First Nat. Bank of Chicago v. Pease,* 168 Ill. 40, 48 N. E. 160, is not in point because the party was dealing with an agent, knowing him to be an agent, but thinking he was authorized by his principal, who in fact knew nothing of the transaction. Also *Seaboard Nat. Bank v. Bank of America,* 193 N. Y. 26, 85 N. E. 829, 22 L. R. A., N. S., 499.

Respondent urges with great vigor the applicability of C. S., sec 5390, which section in the Uniform Negotiable Instruments Act has been considered apropos to similar situations in many of the cases quoted herein.

The following case, on facts substantially the same as the case at bar, thus clearly distinguishes the Rhode Island authority, *supra,* on this point:

"The trial court found, first, that the plaintiff intended the draft to be paid to the individual who received the money from defendant, and that defendant was not guilty of any negligence in paying it; second, that the defendant was led and induced to pay the draft by acts of plaintiff, and plaintiff's negligence prompted its payment; . . . .

"The liability of defendant is asserted on the grounds set forth in section 42 of the negotiable instruments act of New York, which has been enacted in effect in 14 other states, and is claimed to be declaratory of the common law. Said section 42 reads as follows: 'Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.' It is claimed that this signature is a forgery, and the defendant therefore liable. . . . . But it also seems clear that the plaintiff is not entitled to set up this claim. A recent case in Rhode Island (*Tolman v. American Nat. Bank,* 22 R. I. 462, 84 Am. St. 850, 48 Atl. 480, 52 L. R. A. 877) seems to sustain plaintiff's contention. Its syllabus has the follow-

ing: 'A check drawn payable to the order of A. was pro-
cured by representations that the person to whom it was
given was A., and the indorsement of the latter was forged
thereto, and it was paid by the bank. Held, that the bank
was liable to the drawer for such sum, both at the common
law, and under the statute.' Rhode Island has adopted the
statute above cited. The weight of authority, however,
seems to be decidedly in favor of the doctrine that where
a check or draft is drawn or indorsed and delivered to a
party, to be cashed by him under the name in which it is
made out or indorsed, that his signature by way of indorse-
ment in that name is valid as between an innocent holder
and the party delivering it to him. This is commonly put
on the ground that the prayer of the draft or the purchaser
of it is simply carrying out innocently the intention of the
maker or indorser. *Emporia Nat. Bank v. Shotwell,* 35 Kan.
360, 57 Am. Rep. 171, 11 Pac. 141; *Meridian Nat. Bank v.
First Nat. Bank,* 7 Ind. App. 322, 52 Am. St. 450, 33 N. E.
247, 34 N. E. 608; *Robertson v. Coleman,* 141 Mass. 235, 55
Am. Rep. 471, 4 N. E. 619; *Levy v. Bank of America,* 24
La. Ann. 220, 13 Am. Rep. 124; *Land etc. Co. v. North-
western Nat. Bank,* 196 Pa. St. 230, 79 Am. St. 717, 46 Atl.
420, 50 L. R. A. 75. It is also placed sometimes, as was
done in a measure in this instance, by the trial court, on the
ground of negligence on the part of the maker. It is. some-
times held that the payee is a fictitious person, and the
check or draft therefore payable to bearer.'' (*Hoffman v.
American Exch. Nat. Bank,* 2 Neb. (Unof.) 217, 96 N. W.
112.)

Upon a similar state of facts, New Jersey has the follow-
ing well-considered case:

"We do not rest the plaintiff's right to recover upon
section 9 of the Negotiable Instruments Act (C. S., p. 3736).
The check cannot be said to have been payable to bearer
by force of that section declaring that 'the instrument is
payable to bearer . . . . when it is payable to the order of
fictitious or non-existing persons and such fact was known

to the person making it so payable,' because it does not appear that such fact was known to the drawer.

"But we think that the rule is, where (as here), the drawer of a check delivers it, for a consideration which turns out to be fraudulent, to an imposter under the belief that he is the person whose name he has assumed and to whose order the check is made payable, a *bona fide* holder for a valuable consideration, paid to the imposter upon his indorsement of the payee's name, is entitled to recover from the drawer; it appearing that the person to whom the check was delivered was the very person whom the drawer intended should indorse it and receive the money, and that the drawer made no inquiry before issuing the check concerning the identity or credit of the named payee who was unknown to the drawer. (Citing cases.)

"And see *Meridian Bank v. First Bank,* 7 Ind. App. 322, 52 Am. St. 450, 33 N. E. 247, 34 N. E. 608; *Elliott v. Smitherman,* 19 N. C. 338; *Forbes v. Espey,* 21 Ohio St. 474, in which, though the name adopted by the swindler appears to have been really fictitious, the loss is thrown on the drawer for the same reason.

"In the present case the plaintiff has merely carried out the drawer's intent. In other cases of fraudulent impersonation the drawer is sometimes said to have a double intent: First, to make the check payable to the person before him, and, secondly, to make it payable to the person whom he believes the stranger to be. But the courts have almost unanimously held that the first is the controlling intent, except where the named payee was already known to the drawer, as in *Cundy v. Landsay,* 3 A. C. 459, and *Rossi v. National Bank,* 71 Mo. App. 150, or was more particularly identified in some manner; e. g., by some designation, description, or title, as in the case of *Mercantile Nat. Bank v. Silverman,* 148 App. Div. 1, 132 N. Y. Supp. 1017, none of which factors are present in the case at bar. A man's name is the verbal designation by which he is known, but the man's visible presence is a surer means of identification. In the case at bar, if the plaintiff, before cashing the check, had

sent for and asked the drawer whether or not the person presenting the check was the person to whom it was intended to be paid, the answer would have been in the affirmative. Of course the drawer was deceived as to the name of the man it was dealing with, but it dealt with, and intended to deal with, the visible man who stood before it, identified by sight and hearing. Thinking this man's name was N. K. Turner, it drew a check to N. K. Turner's order, intending thereby to designate the person standing before it. Clearly, therefore, the plaintiff has simply paid the money to the person to whom the drawer intended it should be paid. Now either the plaintiff or the defendant must suffer the loss. Both were innocent parties, and the loss justly falls upon the defendant whose mistake in issuing the check facilitated the fraud and primarily made such loss possible. Such was undoubtedly the law prior to the Negotiable Instruments Act. By section 23 of that act (C. S., p. 3738) 'where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative,' except as against a party who 'is precluded from setting up the forgery or want of authority.' If we assume that the indorsement in the present case was a forgery or without authority, within the meaning of that section, still in the light of the cases herein referred to the drawer 'is precluded from setting up the forgery or want of authority, and so the signature is not inoperative as to him, and the law remains unchanged.' " (*Montgomery Garage Co. v. Manufacturers' Liability Co.*, 94 N. J. L. 152, 22 A. L. R. 1224, 109 Atl. 296.)

As between Betsun and Uriola, Betsun is therefore the party that must stand the loss.

Conceding the right of a bank to cancel credit given a depositor when a check is deposited by such depositor and entered on the books of the bank, and charge back to the account of the depositor the amount of its loss because the check is a forgery (*Bailie v. Augusta Savings Bank*, 95 Ga. 277, 51 Am. St. 74, 21 S. E. 717; *Blake v. Hamilton Dime Savings Bank Co.*, 79 Ohio St. 189, 128 Am. St. 684, 16

Ann. Cas. 210, 87 N. E. 73, 20 L. R. A., N. S., 290; *National Gold Bank & Trust Co. v. McDonald,* 51 Cal. 64, 21 Am. Rep. 697; *Ocean Park Bank v. Rogers,* 6 Cal. App. 678, 92 Pac. 879; *Lyon County State Bank v. Schaffer,* 102 Kan. 868, 171 Pac. 1159; *Belsheim v. First Nat. Bank of White Salmon,* 77 Wash. 552, 137 Pac. 1055; 3 R. C. L. 522; 7 C. J. 633, 636); such right as we have indicated rests on the right of the drawer to demand payment from the indorser, and there was no such right herein.

McCarthy and Wm. E. Lee, JJ., concur.

Dunn, J., concurs in the conclusion reached.

PER CURIAM.—The foregoing opinion is hereby approved as the opinion of the court and the judgment of the lower court is reversed and the cause remanded, with instructions to enter judgment in favor of appellant. Costs are awarded to appellant.