## WESTERN UNION TELEGRAPH CO. v. AMERICAN STATE BANK OF BURK-BURNETT. (No. 2444.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 4, 1925.)

1. **Banks and banking** ⚖️188½—**Immaterial as to telegraph company's liability for paying of money to impostor that bank afterwards paid over money to legal claimant.**

In action by bank for breach of contract by telegraph company in paying money remitted by bank in answer to telegram to an impostor, it was immaterial that bank afterwards paid over certain money to legal claimant, since it had a right to retain the money for such purpose and to require company to repay it.

2. **Banks and banking** ⚖️188½—**Bank held not entitled to recover of telegraph company money remitted by bank and paid by company to impostor.**

Bank *held* not entitled to recover of telegraph company for money remitted by it in response to telegram and paid by telegraph company to an impostor, where party to whom company paid money was party that bank intended it should be paid to, even though he was not the legal claimant.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by the American State Bank of Burkburnett against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Cook, Spencer & Stacy, of Wichita Falls, W. H. Flippen, of Dallas (Francis R. Stark and Joseph L. Egan, both of New York City, of counsel), for appellant.

Fischer & Fischer, of Wichita Falls, for appellee.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

RANDOLPH, J.  This suit was brought by appellee, as plaintiff, against appellant to recover money alleged to have been improperly paid out by appellant acting for appellee.  The plaintiff will herein be designated the Bank, and the defendant will be styled the Company.  Judgment in the trial court was rendered for appellee and from that judgment the Company has appealed to this court.

On December 27, 1921, a man by the name of·Joe Spinks was residing in Los Angeles, Cal.  He was a former resident of Burkburnett, Tex., but had left there on the last day of November, 1921, and removed to California, and had not been back to Burkburnett.  On said 27th December, a party presented himself at the window of the Bank and deposited two checks of the aggregate sum of $745.40, which checks were payable to the order of Joe Spinks.  The said party deposited the checks, and the Bank gave Joe Spinks credit on the books for said amount, and at that time the said party signed a signature card as Joe Spinks; that the teller who accepted the deposit, and none of the officers of the bank, knew such party; neither did they know any party by the name of Joe Spinks.  Joe Spinks of California had never done business with the Bank, and had no account there.  While Joe Spinks who lives in California is referred to as the real "Joe" Spinks, and the party who made the deposit is spoken of as the "impostor," there is no proof in the record that the party making the deposit was not named Joe Spinks.

On January 3, 1922, the Bank received the following telegram:

"Received at Burkburnett, Texas, 49DAH, 9 .54 a. Jan. 3 Cashier Am. State Bank, BBurnett, Texas.  Dear Sir: Please wire me care Western Union and waive identification $650.00 at once and oblige.  Joe Spinks."

On receipt of this telegram the Bank had the Company wire the money called for to Joe Spinks at Mexia, but required identification.  The ·Company paid the money to a party claiming to be Joe Spinks after identification at Mexia.

[1] The Bank's cause of action is based upon its contract with appellant Company, whereby the Company agreed to deliver certain money to one Joe Spinks, and, in case it did not do so, to return the money to it, alleging in its petition that the Company failed to deliver said money to Joe Spinks and refused to return it to the Bank; consequently it is immaterial that the Bank afterwards paid over certain money to the "real" Joe Spinks.  The Bank had the right to retain the money for this purpose, and had the right, therefore, to require the Company to repay it.  This right to retain the money was the Bank's to enable it to protect itself against the demands of a legal claimant.

[2] Appellant's counsel, during the progress of the trial, in objection to certain evidence offered, made the statement, "We admit we got the money, and it was paid to an impostor.  The Company insists that even if the money was paid to an impostor, that, inasmuch as the Bank had accepted the particular individual who presented the checks and made the deposit as Joe Spinks, and that person being the same person to whom the Company paid the money, that the Company· carried out its contract and paid the money to the party the Bank intended it paid to.  The evidence shows that the signature to the telegram, and on the receipt given by such party for the money paid him by the Company, are identical with the signature on the card taken for identification purposes by the Bank, and in the absence of other evidence naturally leads to the presumption that the party who got the money from the Company is the party who made the deposit in the Bank.  This being true, was the party to whom, the Company paid the money the party the Bank intended it should be paid to, even though he was not the "real" Joe Spinks?  We think he was the party the Bank intended to receive the money.  The Bank initiated the transaction; they received the party's deposit, and by so doing recognized him as the "real" Joe Spinks.  Clearly, he was the man they had in mind when they arranged for the Company to pay him the money at Mexia.  The duty devolves on the Bank to identify its customers, and when they accepted the unknown as Joe Spinks, they laid the groundwork for the subsequent trouble.  When they had the Company wire its agent at Mexia to pay Joe Spinks the money, they could have had in mind no other person to whom it should be paid.  Until the time of the deposit they had never had any transaction with Joe Spinks, and never knew any Joe Spinks.  To hold that the Company should not have, under the conditions and circumstances as here presented, paid the money to the man who .sent the telegram, and when paid that the Bank should not be held to have ordered it paid to that particular individual, as the man they intended it to be paid to, would be to assert a proposition that is against common sense, in our opinion.  By accepting the unknown as a depositor, they recognized him as Joe Spinks for that purpose, and by answering his telegram and remitting the money as he directed, except as to waiver of identification, the Bank made themselves responsible for his being the party who made the deposit, and further shows that he was the man they intended to get the money, as being the Joe Spinks they had done business with.  On the question of identification there can be but one conclusion: To the Bank the man who made the deposit *was* Joe Spinks, and when this man was identified, then the man got the money they intended should get it, and that they expected to be identified.  Boatsman v. Stockmen's Nat. Bank, 56 Colo.

495, 138 P. 764, 50 L. R. A. (N. S.) 107; Emporia Nat. Bank v. Shotwell, 35 Kan. 360, 11 P. 141, 57 Am. Rep. 171; Uriola v. Twin Falls Bank & Trust Co., 37 Idaho, 332, 215 P. 1080; Samuel v. Cheney, 135 Mass. 278, 46 Am. Rep. 467; Meyer v. Indiana Nat. Bank, 27 Ind. App. 354, 61 N. E. 596.

Holding that the Company paid the money to the party to whom the Bank intended it to be paid, we reverse the judgment of the trial court, and here render judgment in favor of appellant.